IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**VIRGINIA ATKINS MITCHELL**                                                           **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO.:3:20-CV-194-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

## MEMORANDUM OPINION

The plaintiff, Virginia Atkins Mitchell, seeks judicial review of the Social Security Administration's decision denying her application for Social Security Disablilty Benefits. The plaintiff asserts two errors on this appeal. The undersigned, having reviewed and considered the record, briefs and oral argument and having considered the applicable regulations and case law in this matter, affirms the decision of the Commissioner of Social Security

## FACTS

The plaintiff, Virginia Mitchell, filed for Social Security Disability benefits on March 8, 2018, alleging onset of disability commencing on May 14, 2010. The plaintiff alleges she has been disabled due to back problems exacerbated by a work injury. Her date last insured (DLI) is December 31, 2014, so the plaintiff's disability must be established as of that date.

The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on July 2, 2019. (Dkt. 13 p. 46-57).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] The administrative record is Docket 13 Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

1

The ALJ determined Mitchell had the following severe impairments: lumbar degenerative disc disease, status-post lumbar spine surgeries for level L4-L5, L4-5 and L2-5 (February 2011 and September 2014); arthralgia of the hips; and lumbar stenosis. The ALJ found she retained the residual functional capacity (RFC) to perform a limited range of light work but was restricted to standing and walking only four hours in an eight-hour workday. He found she could sit six hours per workday. Mitchell has past relevant work experience as an assistant director and director of a daycare center, which is sedentary skilled work, though performed by the plaintiff at a light level. She also had past work as a secretary which is sedentary skilled work. She also had past work experience as a teacher aide which is light, semi-skilled work. Based on vocational expert testimony, the ALJ found Mitchell could return to any of her past relevant work.

## ANALYSIS

The plaintiff asserts two errors on appeal. Mitchell argues the ALJ erred in failing to include all her limitations within the RFC and that the ALJ misrepresented the totality of the findings of the plaintiff's MRI.

### 1. The ALJ's Decision

The plaintiff first argues the ALJ assessed an RFC that fails to include all her limitations. She testified that she became disabled because of her spine impairments which were exacerbated by a work injury on May 14, 2010. She had back surgery in 2011 which she testified was done incorrectly. She said she suffered many falls after this surgery and used a walker every day until after her second surgery in 2014. She also testified that she could walk 150 steps, sit for 20 minutes, stand for 30 minutes, and lift 5 pounds.

The ALJ, however, found that while the medical evidence showed Mitchell had limitations, the evidence did not support her testimony about the intensity, persistence and limiting effects of her spinal problems. Mitchell began having intermittent back pain in 2008 and reported that she slipped at work which caused worsening pain. An MRI showed moderate stenosis at L4-5, mild to moderate stenosis at L3-4, degenerative facet disease at L4-5 with disc prolapse, causing neurogenic stenosis at L4-5, and a slight subluxation at L4-5. The ALJ found this MRI would support the restricted light RFC but no more. He found the medical records did not support a medical need for an assistive device given the many findings of normal strength in her examinations. The ALJ noted that when Mitchell began treatment with Dr. Timothy Bassett, an orthopedic specialist, she reported pain and had a positive straight leg raising test, but she was more comfortable in a forward flexed position, indicating to the ALJ that she did not have postural limitations. After her March 2011 lateral recess decompression and fusion surgery at L3-5, x-rays showed good alignment and positioning and no abnormalities other than sacroiliac tenderness. A June 20111 examination was normal except for decreased pulses in the left leg. The ALJ found the fact that an antalgic gait noted on August 18, 2011, supported the four-hour limit on standing and walking, but because she was progressing well in physical therapy and even doing planks at that time, he found that greater limits were not shown. Mitchell's doctor reviewed an August 2011 MRI and opined he did not see anything specific to the spine that concerned him. A September 2011 examination found normal reflexes and muscle strength in all muscle groups and good ambulation, which the ALJ noted contradicted the plaintiff's claim about the severity of her symptoms. Bassett did not find any significant findings on examination to back up or explain her complaints of frequent falling. Though specifically requested by Mitchell, Bassett did not prescribe a rolling walker or other assistive device.

The ALJ noted there were no treatment records between September 2011 and June 2014, which supports finding that her condition was not as severe as she testified.

In June 2014, the plaintiff returned to the orthopedist who found no abnormalities other than diminished reflexes at the knees and ankle, which the ALJ again notes support the four-hour standing and walking limitation. The ALJ found that Mitchell's 5/5 strength and intact sensation argued against greater limitations. The findings were the same in August 2019. Imaging showed maintained sacroiliac joints and mild degenerative changes in both hips, but a worsening of her lateral-listhesis, leading to a second fusion surgery at L2-5.

Post follow-up care showed she was happy with her progress with some minimally bothersome on and off muscle cramps but was able to do her activities of daily living without pain. Her strength was 5/5 throughout without neurological deficits. She continued to do well and her back and leg pain was improving. The ALJ again notes these findings support the RFC but not the plaintiff's subjective complaints. This was the last treatment before Mitchell's date last insured.

The ALJ also discussed a 2017 MRI -- well after the DLI -- which showed mild multilevel degenerative disc disease, but no canal or foraminal stenosis, except a suggestion of some foraminal stenosis on the left at L-5-S1. She was fully ambulatory though she had a slightly antalgic gait, and lumbar epidural steroid injections provided almost complete pain relief. The ALJ also noted significant improvement after her 2014 surgery.

2. **Did the ALJ Fail to Account for all Limitations**

The plaintiff argues the ALJ should have at least considered a closed period of disability ending after her second surgery in 2014, given her improvement after the second surgery. The ALJ, however, expressly considered the medical records and findings before the second surgery.

4

For example, he found the opinions of the DDS physician only partially persuasive. This physician found Mitchell could perform light work, but the ALJ found because Mitchell had a slightly antalgic that she should be restricted to standing/walking for only four hours of eight. But because her early medical records indicated she was more comfortable flexing forward, the ALJ rejected the postural limitations suggested by the DDS physician. The plaintiff cites to records of her subjective symptoms and to her reports of repeated falls. Mitchell also argues that the ALJ failed to consider her need for an assistive device to aid in walking. The court does not see any error in the ALJ's finding that she did not need the rolling walker. Mitchell expressly sought a prescription for it from her treating physician who did not issue a prescription. The doctor's failure to respond to the request for a prescription provides evidence to support the ALJ's determination that it was not medically necessary. Furthermore, her reported falls, which could indicate she needed an assistive device, was not corroborated by the medical evidence. The DDS physician reported the treating physician's physical examination "did not find any significant findings to back up her subjective complaints of frequent falling." (R. 54, 412. Ex 4F/5). While the records could support findings more favorable to Mitchell than those assessed by the ALJ, the court finds substantial evidence supports the RFC and must affirm.

### Consideration of MRI Tests

Mitchell argues the ALJ has picked only those parts of the evidence that support denying the claim citing *Loza v.* Apfel, 219 F.2d 378 (5th Cir. 2000). The ALJ, she urges the court, has discounted her spinal impairment in finding she could walk and stand for four hours because of "*mild and moderate findings* on medical imaging of the lumbar spine with two surgeries." (R. 53). She says that the ALJ's decision misrepresents the seriousness of the findings by only stating "magnetic resonance imaging (MRI) of the lumbar spine showed moderate stenosis at L4-

5

5, mild to moderate stenosis at L 3-4, degenerative facet disease at L4-5 with disc prolapse causing neurogenic stenosis at L4-5 and slight subluxation at L4-5." (R.51) Mitchell does not think this a fair statement of the MRI findings because it failed to include the following findings from the MRI report:

> Scoliosis involves the lumbar spine. There is evidence of previous fusion at the L4-5 level. In addition, there is evidence of previous laminectomy at L3-4 to L5-S1. *Prominent* epidural scar surrounds the thecal sac at L3-4 level and this causes spinal stenosis at this level. In addition, there is *prominent bilateral foraminal stenosis* at the L2-3 level due to facet hypertrophy. (Plaintiff's brief p. 9)

The court is not sure that the difference in language is significant. Mitchell's orthopedist interpreted the MRI as showing moderate stenosis at one level and mild to moderate stenosis at another level. (R. 419) Furthermore, the ALJ's decision quoted the above language from the MRI elsewhere in the opinion almost verbatim. He said, "On August 30, 2011, a lumbar spine MRI showed an epidural scar at L3-4 causing thecal sac narrowing, bilateral foraminal effacement of L2-3 due to facet hypertrophy, and scoliosis with surgical change."(R. 52) The ALJ went on to note Dr. Bassett records show the doctor had not seen anything specific in the spine to be particularly concerned about and had noted Mitchell had no direct nerve compression. (R.52 citing to R. 413)

The ALJ clearly reviewed the MRI, but he also found more severe limits were not justified because clinical examinations in 2011 had mostly normal findings; there was then a three-year gap in treatment; and when Mitchell resumed treatment in 2014, she again had largely normal findings. (R. 53). The ALJ's formulation of the RFC also relied in part on the opinion the DDS physician. This physician reviewed the MRI and found the plaintiff could perform light work, meaning she could stand and walk six of eight

6

hours. The ALJ, looking at the noted antalgic gait, restricted Mitchell to standing and walking no more than four hours.

The ALJ appears to have considered all the evidence in the record and has explained in some detail how and why he arrived at the RFC. Because he points to specific evidence to support his findings, even though there is also evidence that would support an even more restricted RFC, the court finds that the RFC and the decision are supported by substantial evidence and must therefore be affirmed.

**THIS** the 25th day of August 2021.

                                                **/s/ David A. Sanders**
                                                **U.S. MAGISTRATE JUDGE**